IN THE UNITED STATES DISTRICT COURT


UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| RUSSELL POKORNY | ) | CASE NO. 1:14-CV-02821 |
| | ) | |
| Plaintiff, | ) | JUDGE DONALD C. NUGENT |
| | ) | |
| vs. | ) | |
| | ) | |
| EXCAVATING BUILDING MATERIAL | ) | MEMORANDUM OPINION |
| AND CONSTRUCTION DRIVERS | ) | AND ORDER |
| UNION LOCAL NO. 436 | ) | |
| PENSION FUND, et al., | ) | |
| | ) | |
| Defendants. | ) | |

This case is before the Court on Defendants, Excavating Building Material and

Construction Drivers Union Local No. 436 Pension Fund and the Board of Trustees of the

Building Material Drivers Union Local 436 Pension Fund ("Defendants") Motion to Dismiss for

Judgment on the Administrative Record (ECF #9).  For the reasons set forth below, Defendants'

motion is GRANTED as to Count I of Plaintiff's Complaint and DENIED as to Counts II and III.

**PROCEDURAL BACKGROUND**

Plaintiff Russell Pokorny, ("Plaintiff") filed a Complaint on December 29, 2014 against

Defendants. (ECF #1).  The Complaint sets forth three counts of action claiming that Defendants violated his rights under ERISA, the Employment Retirement Security Act ("ERISA") of 1974. 29 U.S.C. §1001, et seq.  Counts One and Two seek monetary, injunctive and other appropriate equitable relief as provided by ERISA §502(a)(3), 29 U.S.C. §1132(a)(3) and (d), as well as reasonable attorney fees and expenses provided by ERISA §502(g), 29 U.S.C. §1132(g) and (e). Count Three is plead in the alternative to Count One and argues that Plaintiff is entitled to equitable estoppel under the aforementioned sections of ERISA, claiming that Plaintiff relied upon a "written misrepresentation of material fact" made to him by Defendants.

**FACTUAL BACKGROUND**

Plaintiff was employed by several of Defendants Union Local 436 (the "Union") employers beginning in the early 1970s.  Plaintiff became a member of the Union in August of 1973. (Administrative Record "AR" #000086).  During the course of Plaintiff's employment with the Union, his employers paid contributions into the Local 436 Pension Fund ("the Pension Fund") on Plaintiff's behalf. (ECF #1, ¶6).

On February 23, 1989, Plaintiff requested a determination from administrators of the Pension Fund as to whether he was fully vested in order to receive his monthly retirement benefits under its plan. (AR #000142).  Plaintiff alleges that in response,  he received a letter dated March 1, 1989 (the "1989 letter") from Pat Lanese, the Pension Fund's Chairman and Administrator, indicating that Plaintiff had "Credited Service with the Teamsters Local 436 Pension Fund" totaling "10.0 years" and "would be eligible for a deferred vested benefit at age 62.". (ECF #11-3; AR #000139-140).  Plaintiff retired January 16, 1985. (AR #000086).

On July 28, 2013, Plaintiff filed an application seeking payment of his retirement benefits

from the Pension Fund.  (AR #000089).  The Pension Fund denied Plaintiff's Application by letter dated August 14, 2013. (AR #000086-000088).  The Pension Fund based its denial on "successive breaks in service beginning in 1985, with such breaks in service continuing until the end of 1994, at which time [Plaintiff] lost all credited and eligibility service." (AR #000087). This letter further indicated that the Fund determined that Plaintiff did not have the minimum requirement of 10 years of eligible service, and therefore, was not vested in any pension benefit. (AR  #000088).

Plaintiff timely appealed the Pension Fund's denial on August 23, 2013, attaching the 1989 letter that indicated that Plaintiff was vested as would receive retirement benefits.  (AR #000138).  Plaintiff appeared before the Pension Fund's Claims Review Board (the "Board") on April 30, 2014 to present his appeal.  The Board denied Plaintiff's benefit appeal by letter dated October 30, 2014 (AR  #000029-000047).  The Board indicated that the Fund record shows that between 1973 and 1985 Plaintiff's Union employers reported that Plaintiff earned only 9.5 years of eligibility service, and was therefore not entitled to benefits. (AR #000030-31).

This matter is now before this Court pursuant to Plaintiff's Complaint and Defendants Motion for Judgment on the Administrative Record.  Before discussing the substantive matters presented in this case, the Court would like to respond to a procedural issue presented by Plaintiff in its subsequent Memorandum in Opposition. (ECF #11).  Plaintiff claims that Defendants are in default because they "have yet to answer or otherwise move in response to Plaintiff's Complaint." (*Id*. at 4).  However, the docket in this case clearly states that on March 6, 2015,  "Defendants Motion to Dismiss for Judgment on the Administrative Record" was filed. (*See* ECF #9).  A motion to dismiss is a proper responsive pleading under Rule 12 of the Federal Rules of Civil

Procedure, and therefore, Defendants are not in default.[1]

## STANDARD OF REVIEW AND DISCUSSION

The parties do not dispute that the Plan managed by Defendants in this case is an employee benefit plan as defined in ERISA. See 29 U.S.C. § 1002(1) & (3).  Furthermore, it is not disputed that Defendants employees, through their implementation and interpretation of the Plan, acted as fiduciaries toward Plaintiff.

The Sixth Circuit has held that in an ERISA case such as this, this Court is to apply one standard of review when evaluating Plaintiff's denial of benefits claim, and use another standard of review for the breach of fiduciary duty and equitable estoppel claims.  Therefore, these Counts will be discussed separately.

Furthermore, there have been cross-pleadings arguing whether a Plaintiff can bring these types of actions simultaneously under ERISA.  Courts in Ohio have found many instances where a  Plaintiff was in fact allowed to plead both denial of benefits and equitable claims under ERISA §1132 - usually where Plaintiff cannot obtain complete relief under only one action. *See, e.g., Stiso v. International Steel Group*, 2015 WL 1319957 (6th Cir., Mar. 25, 2015); *Pearson v. FirstEnergy Corp. Pension Plan, et al.*, 2014 WL 7410510, (N.D. Ohio, Dec. 31, 2014); *Gore v. El Paso Energy Corp. Long Term Disability Plan*, 477 F.3d 833 (6th Cir. 2007).  This issue is not relevant and will not be addressed  herein, as Plaintiff's claim for denial of benefits is dismissed on other grounds.

---

[1]Plaintiff's citation of *Woods v. Northport Pub. Sch.*, 487 Fed. Appx. 968, 972 (6th Cir. 2012) to support the statement that Defendants motion for judgment on the administrative record is not a proper responsive pleading under Rule 12 is inaccurate and therefore unpersuasive.

## I.      Plaintiff's 501(a)(1)(B) Benefits Claim - Count One

ERISA Section 502(a)(1)(B) gives a participant or beneficiary the right to bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B).

A benefit claim challenged under Section 502(a)(1)(B) on ERISA, 29 U.S.C. §1132(a)(1)(B) is to be reviewed *de novo*, unless the plan gives the claims fiduciary discretionary authority to determine benefit eligibility and construe the terms of the plan. *Firestone Tire & Rubber Co.*, 489 U.S. 101, 115 (1989).  When a plan affords discretion to its fiduciary to pay or deny claims, the Court must review the fiduciary's decision under the highly deferential arbitrary and capricious standard. *Haus v. Bechtel Jacobs Co.*, 491 F.3d 557, 561 (6th Cir. 2007).

The parties do not dispute that the Plan at issue in this case contains the requisite discretionary language.  The provisions of Article 11 of the Plan provide:

> 11.1    The Board of Trustees shall be the administrator of the Plan within
>          the meaning of Section 3(16) of ERISA;
>
> 11.2    The Administrator shall administer the Plan in accordance with its
>          terms, and shall have all powers necessary to carry out the provisions
>          of the Plan...The Administrator shall have total and complete discretion
>          to interpret the Plan and to determine all questions arising in the
>          administration, interpretation and application of the Plan... (AR #000215).

Therefore, the arbitrary and capricious standard of review is appropriate when reviewing the Board's decision to deny Plaintiff's appeal.  This standard of review is the least demanding form of judicial review of administrative action under ERISA; when it is possible to offer a reasoned explanation, based upon the evidence, for a particular outcome, that outcome is not arbitrary or capricious. *Schwalm v. Guardian Life Ins. Co.*, 626 F.3d 299, 308 (6th Cir. 2010

(internal citations omitted).  The arbitrary and capricious standard requires courts to review the plan provisions and the record evidence and determine if the administrator's decision was 'rational.' *Id.*

This deferential review, however, is not a mere rubber stamp of the plan administrator's claim denial. *Id.*  The decision to deny benefits "must still be the result of a deliberate, principled reasoning process and [be] supported by evidence." See *Moss v. Unum Life Ins. Co.*, 495 Fed. Appx. 583, 590 (6th Cir. 2012).

The question in this case whether Defendants acted arbitrarily and capriciously when it denied Plaintiff's pension benefits in 2013, and then again on appeal in 2014.  This Court finds that the evidence within the record supports the denial of benefits, and therefore, the decision was neither arbitrary nor capricious.

When Plaintiff first applied for pension benefits in 2013, the Fund reviewed all employment records pertaining to Plaintiff's hours of service and contributions made to the pension fund on his behalf.  The Fund determined that Plaintiff did not have the requisite 10 years of service and that there were breaks in employment that denied his eligibility. (AR #000086-88).

It wasn't until the appeal of 2014 that the Plaintiff presented the Review Board with the 1989 letter and other documents to refute the denial.  The Board reviewed the 1989 letter, along with other records in the Fund's file and records from the Local 436 file.  The Board also allowed Plaintiff time in which to present additional, independent employment records to support his argument. (AR #000032).  After completing its review of these internal and external records, the

Board affirmed "the Fund's decision that [Plaintiff] *is not* entitled to a pension benefit." (AR #000032).

"A decision reviewed according to the arbitrary and capricious standard must be upheld if it results from 'a deliberate principled reasoning process' and is supported by 'substantial evidence'." *Schwalm, supra, quoting Baker v. United Mine Workers of Am. Health and Ret. Funds,* 929 F.2d 1140, 1144 (6th Cir. 1991).  In this case, the Board's decision appears to have been the result of a thorough review of the internal and external documents and records available regarding Plaintiff's union employment.  The Board decided that based upon the records, Plaintiff did not accumulate enough years of employment under the Plan to receive pension benefits.  Under the arbitrary and capricious standard, a Court must accept an ERISA plan administrator's rational interpretation of a plan even in the face of an equally rational interpretation offered by the participants. *See Morgan v. SKF USA, Inc.,* 385 F.3d 989, 992 (6th Cir. 2004).

For these reasons, Plaintiff's claim for denial of benefits in Count I  is dismissed.

**2.      Plaintiff's §502(a)(3) Breach of Fiduciary Duty Claim (Count Two)**

ERISA §502(a)(3) "authorizes a participant, beneficiary, or fiduciary to enjoin any act or practice which violates any provision of...the plan, or to obtain other appropriate equitable relief..." 29 U.S.C. §1132(a)(3).  The duties charged to an ERISA fiduciary are the highest known to the law. *Pfiel v. State Street Bank and Trust Co.*, 671 F.3d 585, 598 (6th Cir. 2012).  A fiduciary must discharge his duties with respect to the plan "solely in the interest of the participants and beneficiaries." *Haviland v. Metro. Life Ins.Co.*, 730 F.2d 563, 570 (6th Cir. 2013).

The Sixth Circuit has held that "[c]laims for breaches of fiduciary duty and promissory estoppel are not claims for denials of benefits and therefore are addressed in the first instance in the district court, requiring no deference to any administrator's action or decision." *Moore v. Lafayette Life Ins. Co.*, 458 F.3d 416, 427 (6th Cir. 2006).  Therefore, Courts are to address breach of fiduciary duty claims using the *de novo* standard of review, rather than the highly deferential

standard of "arbitrary and capricious." *Stiso v. Int'l Steel Grp.*, 2015 WL 1319957 (N.D. Ohio, March 25, 2015)(citing *Moore, supra*).

In this case, Plaintiff has alleged that the Defendants "breached their fiduciary duties in that they knew, or should have known...that Plaintiff was not vested in the Plan but through their gross negligence made material misrepresentations that Plaintiff was in fact vested in the Plan as of March 1, 1989." (ECF #1, ¶28).  This specifically relates to the 1989 letter Plaintiff received from Defendants.  Plaintiff also alleges that he relied on these misrepresentations, and is therefore, entitled to relief.

When reviewing the factual evidence as it relates to Count II, this Court is permitted to reevaluate the evidence using a *de novo* standard of review.  Based upon this review, there is evidence to support Plaintiff's breach of fiduciary claim, and therefore Defendant's motion is denied as to Count II.

It is well-established that in order to prevail on a claim of breach of fiduciary duty, the Plaintiff must show that: (1) Defendants acted in a fiduciary capacity when it made the challenged representations, (2) Defendants statements constituted material misrepresentations and (3) Plaintiff relied upon Defendants material misrepresentations to his detriment. *James v. Pirelli Armstrong Tire Corp.*, 305 F.3d 439, at 449 (6th Cir. 2012).

In this case, it has already been established that Defendants were acting in their fiduciary capacity when it generated the 1989 letter.  The next step is to determine whether the statement constituted a material misrepresentation that Plaintiff relief upon to his detriment.  This Court believes that Plaintiff has met both criteria.

It is agreed by the parties that during the Board's appellate review in 2014, the record included these three documents relating to Plaintiff's pension benefits:

1.    Plaintiff's "Request for Credited Service" dated February 23, 1989; (AR #000142)

2.    Handwritten notes dated March 1, 1989, tallying up P's service indicating 10 years of service; (AR #000141) and

3.    The March 1, 1989 letter indicating Plaintiff had 10 years of service, and entitled to receive $165.00 per month in pension benefits. (AR #000139-140).[2]

The handwritten notes, showing 10 years of service, were generated after a review of Plaintiff's employment records and other records kept by the Union employers.[3]  From all accounts, this review was conducted on March 1, 1989 and led to the issuance of the letter indicating that "if you were to receive no further service with Local 436 Pension Fund you would be eligible" to receive vested pension benefits. (AR #000139).  There is nothing within the Record from Defendants that was issued to Plaintiff over the next 24 years to indicate otherwise.

As Plaintiff makes clear, the breach of fiduciary duty claim is based upon the 1989 letter which constituted a misrepresentation of Plaintiff's pension benefits. (See ECF #11 at p. 9). Plaintiff is not alleging that Defendants breached their fiduciary duty by denying the claim for benefits. *Id.*  Plaintiff argues this it is precisely because of this letter that Plaintiff did not return to Union employ, and had he been properly told that he only had 9.5 years of eligible service, Plaintiff would have obtained a Union position to complete his eligibility requirements. (ECF #11, p. 3).

Defendants take issue with the 1989 letter; first by attacking its authenticity, and then, in the alternative, by attacking its actual existence because it wasn't in the Fund's file. (ECF #12, p.

---

[2]

Defendants dispute whether the 1989 letter was available for review when Plaintiff first applied for pension benefits in 2013.

[3]This Court takes note that the handwritten notes actually equate to 11 years of service.

4).  Regardless of how Defendants characterize the 1989 letter, it provides reasonable evidence to find that Defendants breached their fiduciary duty to Plaintiff.

First, Defendants argue that the 1989 letter is not persuasive because it is not signed and it is inaccurate. (ECF #9, p. 3).   If this Court proceeds under the assumption that the letter is inaccurate, the law in this Circuit states that "misleading communications to plan participants 'regarding plan administration' (for example, eligibility under a plan, the extent of benefits under a plan) will support a claim for breach of fiduciary duty.'" *Pearson v. FirstEnergy Corp. Pension Plan*, 2014 WL 7410510 (N.D. Ohio, Dec. 31, 2014) quoting *Drennan v. Gen. Motors Corp.*, 977 F.2d 246, 251 (6th Cir. 1992).  Furthermore, a misrepresentation is material if "there is a substantial likelihood that it would mislead a reasonable employee in making an adequately informed decision...[regarding ERISA benefits.]." *Id.* at *4.  This is true regardless of whether the statements or omissions were made negligently or intentionally. *Haviland*, at 575 (*citing James, supra*)

Furthermore, it has been held in this Circuit that arguing that a detailed letter assuring a Plaintiff that his benefit rights were intact "was a mistake" does not, on its own, support a finding that Defendants did not breach their fiduciary duty to Plaintiff. *See Ford v. Owens-Illinois, Inc.*, 961 F.Supp.2d 857 (N.D. Ohio, 2012).

In this case, Plaintiff relied upon the 1989 letter and did not return to union employment based upon the representations made therein. (AR #000143).  Therefore, the evidence before this Court shows that Defendants statements constituted material misrepresentations and Plaintiff relied upon Defendants material misrepresentations to his detriment. *See Haviland*, *supra*.

Conversely, Defendants argue that if this Court does not deem the 1989 letter invalid, it

should ignore the letter merely because it came from the Plaintiff and was not in the Board's file. (ECF #12, at 4).  As Plaintiff points out in his Sur-Reply, Defendants appear to be implying that Plaintiff "fabricated the letter." (ECF #14, p. 9).  Clearly, the 1989 letter is printed on the letterhead of the "Health, Welfare and Pension Fund" and lists the address and phone number of the Fund from the year 1989. (AR #000139).  This letterhead also lists Pat Lanese as Chairman of the Fund, and the signature page lists her as "Administrator" of the Fund. *Id*.

Even if this Court were to agree with Defendants argument and assume that the 1989 letter was somehow created by Plaintiff, then the Record reflects that Defendants simply <u>never responded</u> to Plaintiff's 1989 request regarding his benefits.  The Board's decision does not reference any other document that responded to Plaintiff's 1989 benefits request (AR #000086-87) and no other response has been mentioned in Defendants' pleadings.

Failure to respond to Plaintiff's request altogether would constitute a breach of fiduciary duty, as "ERISA imposes a duty upon fiduciaries to respond promptly and adequately to employee-initiated inquiries regarding the plan or any of its terms." *Krohn* at 547 (internal citations omitted).  Failure to respond "promptly and adequately" constitutes a breach of that duty. *Id*.  Therefore, arguing that there was no response whatsoever by the Defendants does not preclude the Plaintiff's claims in this matter.

The question herein is not whether the Board breached its fiduciary duty when reviewing and discounting the validity of the 1989 letter, as Defendants have argued.  The breach occurred when Plaintiff was given the 1989 letter containing a material misrepresentation regarding his benefits, causing him to rely upon that letter to his detriment.  Clearly, Plaintiff has met the requirements necessary to present a valid breach of fiduciary duty against Defendants.  Therefore, Defendants Motion for Judgment on Count II is denied.

**3.      Plaintiff's §502(a)(3) Equitable Estoppel Claim - Count Three**

This Circuit has recognized the availability of equitable estoppel claims in the context of ERISA pension plans. *See e.g. Bloemker* at 444.  It has also found that though a fiduciary duty claim and an equitable estoppel claim may both rely on material misrepresentations made by a plan fiduciary, they are distinct claims that require separate analysis. *Pearson*, at *6.  As to the appropriate standard of review, this Court is instructed to review this matter *de novo*, requiring no deference to the plan administrator's actions or decision when evaluating Plaintiff's equitable estoppel claim. *See, Stiso, supra* at *3, citing *Moore, supra* at 427.

In *Bloemker*, the Sixth Circuit held that "ERISA equitable estoppel applies to pension plans where a plaintiff can demonstrate extraordinary circumstances in addition to the traditional estoppel elements." *Id.* at 442.  Accordingly, Plaintiff must prove the following elements to prevail on his claim of equitable estoppel against Defendants:

>(1) conduct or language amounting to a representation of material fact,
>(2) awareness of the true facts by the party to be estopped,
>(3) an intention that the representation be acted upon;
>(4) unawareness of the true facts by the individual to whom the representations were made; and
>(5) detrimental and justifiable reliance by the party asserting estoppel.
>    *Id.*

It is clear from the record and the evidence before this Court that Plaintiff has established the necessary elements to prove his equitable estoppel claim.  First, a representation is "material" in an ERISA suit if there is a substantial likelihood it would mislead a reasonable employee in making an adequately informed decision about retirement benefits. *Stark* at 762 (*citing James, supra.*).  In this case, Plaintiff received the 1989 letter from Defendants indicating the amount of pension benefits he was entitled to receive upon retirement.  Such a statement has been deemed a

material misrepresentation in similar ERISA cases. *See, e.g., Stark, supra*. Therefore, the first element of equitable estoppel has been met.

The second and third elements are satisfied by a demonstration that Defendants statements "contained an element of fraud, either intended deception or such gross negligence as to amount to constructive fraud." *Bloemker*, at 442. Gross negligence under Ohio law is defined as "a failure to exercise even that care which a careless person would use." *Hanysh v. Buckeye Extrusion Dies, Inc.*, 2012 WL 3852569 *3 (N.D. Ohio)(citations omitted). Constructive frauds do not require fraudulent intent, and are assumed to have been committed by acts without regard to motive. *Id.* In this case, when reviewing the record and evidence *de novo*, this Court can find that Defendants misrepresentation to Plaintiff about his benefits rises to the level of constructive fraud. As previously outlined herein, Plan Administrator Pat Lanese reviewed Plaintiff's employment records and provided what was believed to be "true" information about Plaintiff's available pension benefits. Administrator Lanese would also have been aware that Plaintiff would rely on the information. Plaintiff claims he relied upon the facts contained within the 1989 letter and that he was not aware of the true facts within the Fund file. Therefore, the evidence supports that Plaintiff has met the second, third and fourth elements of an equitable estoppel claim. *See Hanysh, supra* (finding that Defendant's misrepresentation that Plaintiff was eligible for COBRA coverage rises to the level of gross negligence).

The last element Plaintiff must prove is detrimental and justifiable reliance upon Defendants representation. It has already been established that based upon the 1989 letter, Plaintiff believed he had acquired 10 years of union employment and was entitled to receive benefits. Had Plaintiff been told otherwise, he could have decided at that time to return to union

-13-

employment for the requisite amount of time. Plaintiff was reasonable when he chose to rely upon the 1989 letter from Defendants and believe that he would receive pension benefits when he reached the age of 62. Therefore, Plaintiff has met the fifth element of an equitable estoppel claim.

Once the common law elements of estoppel are met, courts in Ohio have determined that where the language of a plan is unambiguous, a Plaintiff must also show the following: (1) a written representation, (2) plan provisions, which, although unambiguous, did not allow for individual calculation of benefits; and (3) extraordinary circumstances that favor the application of estoppel. *Bloemker*, 605 F.3d 436, 444 (6th Cir. 2010). Extraordinary circumstances exist where "the balance of equity strongly favors the application of estoppel." *Id* at 442 (citations omitted).

In this case, the 1989 letter acts as the written representation. The second requirement is met when a Plaintiff can show there were complex calculations involved in determining the status of benefits, as well as Plaintiff's lack of knowledge as to whether the calculations were correct. *See Id.* at 443-444. In this case, Pat Lanese reviewed Plaintiff's 12 years of employment records and interpreted the Plan provisions in order to generate the 1989 letter. This required calculating credited services for each calendar year based upon the number of hours in "covered employment" per year. (AR #000031). The record indicates that one document shows that Plaintiff had credit for working 11 years, but then another shows credit for 10 years. (AR # 00139-141). Defendants now claim the amount is actually 9.5 years.

This Court can reasonably infer that if the Defendant, with sole possession of these documents, cannot make a uniform decision as to benefits, Plaintiff could not either. *See, e.g.,*

-14-

*Bloemker, supra, Krause v. Ohio Operating Engineers-Pension Fund Board of Trustees*, 2011 WL 1565298 (S.D. Ohio April 25, 2011).  It was Defendants obligation to provide accurate information to Plaintiff as it calculated his pension benefits.  Failure to do so meets this element of an equitable estoppel claim.[4]

Finally, the Plaintiff needs to present extraordinary circumstances to warrant a finding of estoppel. *Id*.  While there are many cases that discuss extraordinary circumstances, the *Bloemker* case is the most binding upon this Court.  That court found that where the Plaintiff's monthly pension benefit was reduced by $500 per month due to a "calculation error," and all other elements of equitable estoppel were met, Plaintiff's estoppel claim could not be dismissed. *Id*. The *Bloemker* Court went on to state that the plaintiff had properly alleged "extraordinary circumstances" after he had relied on his employer's representations when choosing to retire, only to later receive notification that his certified benefits calculation was incorrect and that he would be required to refund the plan the excess money he had received. *Bloemker*, 605 F.3d at 442–43.


Similarly, it has also been found that extraordinary circumstances existed where a Plaintiff was told he was entitled to medical coverage after retirement but it was revoked after "a mistake was made," leaving his family with no medical coverage.  *See Kraus, supra.*.

Finally, In the case of *Ford v. Owens-Illinois*, 961 F.Supp2d 857 (N.D. Ohio 2012), the Court denied summary judgment on an equitable estoppel claim where Defendants sent Plaintiff written representations regarding his retirement benefits.  The Court found that extraordinary

---

[4]

 Defendants argument that the Complaint's failure to allege "complex calculations" is a "fatal pleading error" is not supported by law and is therefore unpersuasive.

circumstances were present where Plaintiff asked his employer about his benefits, the employer provided the wrong information, and Plaintiff relied upon this information. *Id*. at 875.

In this case, the balance of equity strongly favors the application of estoppel to prevent Plaintiff from being left with no disability pension benefits for the remainder of his life. (*See, e.g. Krause*).  Defendants misrepresentation regarding Plaintiff's benefits resulted in a potentially serious harm - the complete loss of pension benefits.  As this Court has stated, "[i]t was Defendant who made the misrepresentations, therefore, it is Defendant who may be estopped from denying coverage." *Hanysh, supra* at *4.  Plaintiff's Complaint has properly plead the elements of an equitable estoppel claims against Defendants.  Therefore, Defendants Motion as to Count Three is denied.

**CONCLUSION**

Defendants' Motion for Judgment on the Administrative Record is granted as to Count I

of Plaintiff's Complaint, and denied as to Counts II and III.  Case set for Status Conference on

May 28, 2015 at 9:30 a.m.

IT IS SO ORDERED.


                                                  /s/ Donald C. Nugent
                                              DONALD C. NUGENT
                                              United States District Judge

DATE   May 12, 2015